James E. Doroshow (SBN 112920)
    jdoroshow@foxrothschild.com
Ashe Puri (SBN 297814)
    apuri@foxrothschild.com
FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-1506
Telephone:  310-598-4150
Facsimile:   310-556-9828

Attorneys for Attorneys for Plaintiff,
MERCURY CABLE & ENERGY, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCURY CABLE & ENERGY, INC., a Nevada corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>JIANZHONG ZHONG HUANG a/k/a JASON HUANG, an individual; BORIS RYABOV, an individual; ALEX OKUN, an individual; J. D. SITTON, an individual; MICHAEL D. McINTOSH, an individual; DAVE BRYANT, an individual; CLEMENT HIEL, an individual; MARVIN SEPE, an individual; STEWART RAMSAY, an individual; GEORGE KORZENIOWSKI, an individual; DAVID F. DOCKERY, an individual, BRUCE S. BERNSTEIN, an individual; JEROME P. FANUCCI, an individual; BENTON H. WILCOXON, an individual; and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT OF MERCURY CABLE & ENERGY, INC. FOR WALKER-PROCESS FRAUD; CONSPIRACY TO MONOPOLIZE UNDER 15 U.S.C. § 2; AND UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200**<br><br><br>**[JURY DEMAND]** |

49058596.7

For its Complaint against Defendants Jianzhong Zhong Huang a/k/a Jason Huang, Boris Ryabov, Alex Okun, J. D. Sitton, Michael D. McIntosh, Dave Bryant, Clement Hiel, Marvin Sepe, Stewart Ramsay, George Korzeniowski, David F. Dockery, Bruce S. Bernstein, Jerome P. Fanucci, Benton H. Wilcoxon and Does 1-10, Plaintiff Mercury Cable & Energy, Inc. ("Plaintiff" or "Mercury") hereby states and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.  This claims seek a declaration and other relief determining that U.S. Patent Nos. 7,368,162 (the " '162 Patent") and 7,211,319 (the " '319 Patent") (together, the "Patents" or "Patents-In-Suit") have been asserted and enforced in violation of the Sherman Antitrust Act, as well as other relief.  This claims relate directly to claims asserted in a Complaint filed by CTC Global Corporation ("CTC") in a related action entitled *CTC Global Corporation v. Mercury Cable & Energy, Inc.* currently pending in the United States District Court for the Central District of California as Case No. 8:09-cv-00261 (Hon. David O. Carter presiding) (hereinafter, the "Related Action").  The Court has supplemental jurisdiction over the claims in this Complaint which arise under state law pursuant to 28 U.S.C. § 1338(b) and § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.      This Court has personal jurisdiction over Defendants because of their relationship with CTC, which has invoked the jurisdiction of this Court by filing a Complaint against Mercury in the Related Action, and because CTC alleges that its principal place of business is in California.  On information and belief, Defendants are also residents of the State of California and/or have sufficient contacts with California which supports jurisdiction over them in this Court.

3.      Venue is proper in this District pursuant to 28 U.S.C § 1391.

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

## THE PARTIES

4.     Plaintiff Mercury Cable & Energy, Inc. is a corporation organized and existing under the laws of the State of Nevada.

5.     Upon information and belief, Defendant Jianzhong Zhong Huang a/k/a Jason Huang ("Huang") is an individual and a resident of the State of California. Mercury is informed and believes, and on that basis alleges, that Huang is the current or former Chief Executive Officer and Chief Technical Officer of CTC and is a current director of CTC, and directed, conducted, controlled and/or ratified some or all of the conduct which is the subject of this Complaint.  Upon information and belief, as a current for former officer and director of CTC, Huang has or will receive compensation (including, without limitation, stock options and bonuses) based in whole or in part upon the conduct which is the subject of this Complaint.

6.     Upon information and belief, Defendant Boris Ryabov ("Ryabov") is an individual and a resident of the State of California.  Mercury is informed and believes, and on that basis alleges, that Ryabov is the managing partner of Bright Capital, an independent venture company and a past or current director of CTC. Mercury is informed and believes, and on that basis alleges, that Ryabov directed, conducted, controlled and/or ratified some or all of the conduct which is the subject of this Complaint.  Upon information and belief, Ryabov and Bright Capital have or have received and will receive, among other compensation fees based upon the conduct which is the subject of this Complaint.

7.     Upon information and belief, Defendant Alex Okun ("Okun") is an individual and a resident of the State of California.  Mercury is informed and believes, and on that basis alleges, that Okun is a current or former officer and director of CTC, and directed, conducted, controlled and/or ratified some or all of the conduct which is the subject of this Complaint.  Upon information and belief, as a current for former officer and director of CTC, Okun has or will receive compensation (including, without limitation, stock options and bonuses) based in

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

whole or in part upon the conduct which is the subject of this Complaint.

8.      Upon information and belief, Defendant J. D. Sitton ("Sitton") is an individual and a resident of the State of California.  Mercury is informed and believes, and on that basis alleges, that Sitton is the current or former Chief Executive Officer of CTC and is a current director of CTC, and directed, conducted, controlled and/or ratified some or all of the conduct which is the subject of this Complaint.  Upon information and belief, as a current or former officer and director of CTC, Sitton has or will receive compensation (including stock options and bonuses) based in whole or in part upon the conduct which is the subject of this Complaint.

9.      Upon information and belief, Defendant Michael D. McIntosh ("McIntosh") is an individual and a resident of the State of Colorado.  Mercury is informed and believes, and on that basis alleges, that McIntosh is an attorney (including for Defendants Hiel and Korzeniowski), and a former officer and director of CTC, and directed, conducted, controlled and/or ratified some or all of the conduct which is the subject of this Complaint.  Upon information and belief, as a current for former officer and director of CTC, McIntosh has or will receive compensation (including stock options and bonuses) based in whole or in part upon the conduct which is the subject of this Complaint.

10.     Upon information and belief, Defendant Dave Bryant ("Bryant") is an individual and a resident of the State of California.  Mercury is informed and believes, and on that basis alleges, that Bryant is the current or former Vice President of Technology Adoption of CTC, and directed, conducted, controlled and/or ratified some or all of the conduct which is the subject of this Complaint.  Upon information and belief, as a current for former officer and director of CTC, Bryant has or will receive compensation (including stock options and bonuses) based in whole or in part upon the conduct which is the subject of this Complaint.

11.     Upon information and belief, Defendant Clement Hiel ("Hiel") is an

4

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

1  individual and a resident of the State of California.  Mercury is informed and
2  believes, and on that basis alleges, that Hiel is an inventor (including an inventor
3  with respect to one or more of the Patents-In-Suit), and directed, conducted,
4  controlled and/or ratified some or all of the conduct which is the subject of this
5  Complaint.  Upon information and belief, Hiel has or will receive compensation
6  based upon the conduct which is the subject of this Complaint.

7        12.     Upon information and belief, Defendant Marvin Sepe ("Sepe") is an
8  individual and a resident of the State of California.  Mercury is informed and
9  believes, and on that basis alleges, that Sepe is the current or former Chief Operating
10 Officer of CTC, and directed, conducted, controlled and/or ratified some or all of the
11 conduct which is the subject of this Complaint.  Upon information and belief, as a
12 current for former officer and director of CTC, Sepe has or will receive
13 compensation (including, without limitation,  stock options and bonuses) based in
14 whole or in part upon the conduct which is the subject of this Complaint.

15       13.     Upon information and belief, Defendant Stewart Ramsay ("Ramsay") is
16 an individual and a resident of the State of California.  Mercury is informed and
17 believes, and on that basis alleges, that Ramsay was the former President of CTC,
18 and directed, conducted, controlled and/or ratified some or all of the conduct which
19 is the subject of this Complaint.  Upon information and belief, as a current for former
20 officer and director of CTC, Ramsay has received or will receive compensation
21 (including, without limitation,  stock options and bonuses) based in whole or in part
22 upon the conduct which is the subject of this Complaint.

23       14.     Upon information and belief, Defendant George Korzeniowski
24 ("Korzeniowski") is an individual and a resident of the State of California.  Mercury
25 is informed and believes, and on that basis alleges, that Korzeniowski is an inventor
26 (including an inventor with respect to one or more of the Patents-In-Suit), and
27 directed, conducted, controlled and/or ratified some or all of the conduct which is the
28 subject of this Complaint.  Upon information and belief, as an inventor, current for,

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

1   Korzeniowski has received or will receive compensation (including stock options
2   and bonuses) based in whole or in part upon the conduct which is the subject of this
3   Complaint.

4          15.    Upon information and belief, Defendant David F. Dockery ("Dockery")
5   is an individual and a resident of the State of Colorado.  Mercury is informed and
6   believes, and on that basis alleges, that Dockery is an attorney (including for
7   Defendants Huang and Hiel), and directed, conducted, controlled and/or ratified
8   some or all of the conduct which is the subject of this Complaint.  Upon information
9   and belief, Dockery has received or will receive, among other compensation, fees
10  based upon the conduct which is the subject of this Complaint.

11         16.    Upon information and belief, Defendant Bruce S. Bernstein
12  ("Bernstein") is an individual and a resident of the State of California.  Mercury is
13  informed and believes, and on that basis alleges, that Bernstein has served as an
14  expert (including for CTC and one or more of the Defendants in this action), and
15  directed, conducted, controlled and/or ratified some or all of the conduct which is the
16  subject of this Complaint.  Upon information and belief, as a current or former expert
17  for CTC, Bernstein has received or will receive compensation (including stock
18  options, bonuses and/or fees) based in whole or in part upon the conduct which is the
19  subject of this Complaint.

20         17.    Upon information and belief, Defendant Jerome P. Fanucci ("Fanucci")
21  is an individual and a resident of the State of Massachusetts.  Mercury is informed
22  and believes, and on that basis alleges, that Fanucci has served as an expert
23  (including for CTC and one or more of the Defendants in this action), and directed,
24  conducted, controlled and/or ratified some or all of the conduct which is the subject
25  of this Complaint.  Upon information and belief, as a current or former expert for
26  CTC, Fanucci has received or will receive compensation (including stock options,
27  bonuses and/or fees) based in whole or in part upon the conduct which is the subject
28  of this Complaint.

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION
49058596

18.     Upon information and belief, Defendant Benton H. Wilcoxon ("Wilcoxon") is an individual and a resident of the State of California.  Mercury is informed and believes, and on that basis alleges, that Wilcoxon is the current or former Chief Executive Officer of CTC and is a current or former director of CTC, and directed, conducted, controlled and/or ratified some or all of the conduct which is the subject of this Complaint.  Upon information and belief, as a current or former officer and director of CTC, Wilcoxon has or will receive compensation (including stock options and bonuses) based in whole or in part upon the conduct which is the subject of this Complaint.

19.     Upon information and belief, CTC is a corporation organized and existing under the laws of the State of Delaware.  CTC, together with bankrupt entities Composite Technology Corporation and CTC Cable Corporation, both of which were Nevada corporations, are hereinafter collectively referred to as "CTC."

20.     Mercury is informed and believes, and on that basis alleges, that each of the Defendants in this action who now serve or have served as officers, directors or employees of CTC conspired with CTC to violate the antitrust laws which are the subject of this Complaint out of their own personal interests outside of CTC's interests, and stood to benefit personally from their own misconduct as alleged herein.

21.     Mercury is ignorant of the true names and capacities of the Defendants sued herein under the fictitious names Does 1-10, inclusive (the "Doe Defendants").  Upon information and belief, the Doe Defendants are involved with CTC and/or the activities alleged herein, but Plaintiff has been unable to identify the names of the Doe Defendants from public records or other information available to Mercury.  Mercury will seek leave to amend this Complaint to allege the true names and capacities of the Doe Defendants when ascertained.

## DEFENDANTS' ANTICOMPETITIVE CONDUCT

22.     Mercury incorporates by reference and realleges the preceding

7

49058596

1  paragraphs of this Complaint as though fully set forth herein.

2       23.  In the Related Action, CTC has alleged that Mercury and others have

3  infringed and are continuing to infringe the '162 Patent and '319 Patent under 35

4  U.S.C. § 271(a)-(c).

5       24.  In the Related Action, Mercury denies that it is infringing or has

6  infringed, directly or indirectly, any of the asserted claims of the '162 Patent and

7  '319 Patent.

8       25.  Mercury's Accused Products do not infringe any of the claims of the

9  '162 Patent or '319 Patent, either literally or under the doctrine of equivalents.  To

10 the extent that CTC alleges infringement under the doctrine of equivalents, the

11 differences between the asserted claims and the Accused Products are substantial,

12 and any attempt to cover the Accused Products by equivalency would improperly

13 ensnare the prior art.

14      26.  The non-infringement positions articulated below are merely examples

15 of some of the ways in which Mercury's Accused Products fall outside the scope of

16 the claims of the '162 Patent.

17      27.  For example, the asserted claims of the '162 Patent require:

18      &bull;  <u>Claim 1</u>:  "an inner core comprising a plurality of substantially

19        continuous reinforcing fibers of at least a first type, the first fiber type

20        having a tensile strength that exceeds the tensile strength of glass fibers"

21      &bull;  <u>Claim 20</u>:  "an inner core consisting of a plurality of substantially

22        continuous reinforcing fibers, the fibers having a tensile strength that

23        exceeds the tensile strength of glass fibers"

24      &bull;  <u>Claim 27</u>:  "an inner core comprising a plurality of reinforcing carbon

25        fibers and at least a portion of a plurality of reinforcing fibers having a

26        tensile strength in excess of glass fibers"

27      &bull;  <u>Claims 29 and 36</u>:  "an inner core comprising a plurality of substantially

28        continuous reinforcing fibers of at least a first type, the first type having

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

a tensile strength that exceeds the tensile strength of glass fibers,

wherein the fibers are substantially parallel to the longitudinal axis."

28.    In contrast to the claims of the '162 Patent, Mercury's Accused Products are pultruded composite rods having three layers of fibers (glass, carbon, glass) embedded in three distinct resin matrices.  The Accused Products have an innermost layer of glass fiber composite, a middle layer of carbon fiber composite, and an outer layer of glass fiber composite, with all three fiber layers in distinct matrices.  The innermost glass fiber layer of the Accused Products *is* the "inner core" or "first section" of the Accused Products; hence, the Accused Products do not have an "inner core" containing a fiber of the "first type" which is carbon fiber, which exceeds the modulus of elasticity of glass fibers, or which exceeds the tensile strength of glass fibers.  Accordingly, Mercury's Accused Products do not meet these limitations of these claims.

29.    In addition, all of the claims of the Patents require a single resin matrix. For example:

- Claim 1 of the '162 Patent states, "a resin matrix, wherein the fibers of the inner and outer cores are embedded therein";

- Claims 1, 27, 29, and 36 of the '162 Patent state, "a cured resin matrix, wherein the fibers of the inner and the outer cores are embedded therein."

30.    The patentee asserted during prosecution of the Patents that the composite core has a single, unitary resin matrix.  For example, in the response filed on March 17, 2006 in the prosecution history for the related '319 Patent, in responding to the Office Action dated November 2, 2005, the patentee stated:

[T]he core comprises a single resin system, that embeds the plurality of fibers; the resin having one melting point. Quigley does not disclose this element. . . .  Therefore, Quigley does not disclose a unitary matrix that holds the

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION
49058596

fibers together as a unit or a load member; rather, layers of separate matrix systems wherein each layer contributes to secondary reformation.

(Prosecution History, March 17, 2006 Response, at p. 27.)  This is consistent with the specifications of the Patents-In-Suit, which repeatedly refer to *a* resin matrix such that a person of ordinary skill in the art would understand that the fibers of the multiple sections are embedded in the same resin matrix.

31.    As discussed above, Mercury's Accused Products have three layers of fibers (glass, carbon, glass) embedded in three distinct resin matrices.  Accordingly, Mercury's Accused Products do not have a unitary resin matrix as required by the asserted claims.  Further, to the extent CTC attempts to argue that the three resin matrices of Mercury's Accused Products are equivalent to the single resin matrix of the Asserted Patents, such an argument would be precluded by the doctrine of prosecution history estoppel.

32.    Contrary to what CTC has alleged in the Related Action, Mercury does not engage in any activities that would constitute an act of direct or indirect infringement.  For example, Mercury does not make, use, sell, offer for sale, or import any Accused Products in the United States.  Nor has Mercury contributed to or induced another to infringe the Patents-In-Suit.  Mercury has not engaged in any activities in the United States with respect to the Accused Products for more than five years.

33.    To the extent that CTC argues that certain of Mercury's activities prior to June 2012 constitute acts of infringement (they do not), such activities were not in violation of a valid U.S. patent, as all such activities occurred prior to the issuance of the Second Reexamination Certificates for the Patents-In-Suit, and as stated in Defendants' Tenth Affirmative Defense set forth in Mercury's Answer to the Third Amended Complaint and Affirmative Defenses in the Related Action, intervening rights have arisen with respect to all such activities.

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION
49058596

34.     In addition, the non-infringement positions articulated below are merely examples of some of the ways in which Mercury's Accused Products fall outside the scope of the claims of the '319 Patent.  In the Related Action, Mercury has also reserved the right to assert additional non-infringement positions as this case progresses.

35.     For example, the asserted claims of the '319 Patent require an "inner core" or "first section" comprising fibers of a "first type having a modulus of elasticity that exceeds the modulus of elasticity of glass fibers," or, simply, "carbon fibers":

- <u>Claim 1</u>:  "an inner core comprising a plurality of substantially continuous reinforcing fibers of at least a first type, the fiber type having a modulus of elasticity that exceeds the modulus of elasticity of glass fibers"

- <u>Claim 13</u>:  "a first section comprising a plurality of substantially continuous reinforcing fibers of at least a first type, the fiber type comprising a modulus of elasticity that exceeds the modulus of elasticity of glass fibers"

- <u>Claim 23</u>:  "an inner core comprising a plurality of substantially continuous reinforcing carbon fibers"

- <u>Claim 27</u>:  "a first section comprising a plurality of substantially continuous reinforcing carbon fibers"

- <u>Claims 60, 69, 71</u>:  "a first section comprising a plurality of substantially continuous reinforcing fibers of a first type having a modulus of elasticity that exceeds the modulus of elasticity of glass fibers"

36.     In contrast to the claims of the '319 Patent, Mercury's Accused Products are pultruded composite rods having three layers of fibers (glass, carbon, glass) embedded in three distinct resin matrices.  The Accused Products have an

innermost layer of glass fiber composite, a middle layer of carbon fiber composite, and an outer layer of glass fiber composite, with all three fiber layers in distinct matrices.  The innermost glass fiber layer of the Accused Products *is* the "inner core" or "first section" of the Accused Products; hence, the Accused Products do not have an "inner core" containing a fiber of the "first type" which is carbon fiber, which exceeds the modulus of elasticity of glass fibers, or which exceeds the tensile strength of glass fibers.  Accordingly, Mercury's Accused Products do not meet these limitations of these claims.

37.    In addition, all of the claims of the Patents-In-Suit require a single resin matrix.  For example:

- Claims 1 and 23 of the '319 Patent state, "wherein the fibers of the inner and outer cores are embedded in said resin matrix";

- Claim 13 of the '319 Patent states, "wherein the fibers of the first section and the one or more other sections are embedded within the resin matrix";

- Claim 27 of the '319 Patent states, "wherein the fibers of the first section and the at least other section are embedded within the resin matrix";

- Claims 60, 69, and 71 of the '319 Patent state, "wherein the fibers of the first and second sections are embedded within the resin matrix"

38.    The patentee asserted during prosecution of the Patents-In-Suit that the composite core has a single, unitary resin matrix.  For example, in the response filed on March 17, 2006 in the prosecution history for the '319 Patent, in responding to the Office Action dated November 2, 2005, the patentee stated:

> [T]he core comprises a single resin system, that embeds the plurality of fibers; the resin having one melting point. Quigley does not disclose this element. . . . Therefore, Quigley does not disclose a unitary matrix that holds the

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

fibers together as <u>a unit</u> or <u>a load member</u>; rather, layers of separate matrix systems wherein each layer contributes to secondary reformation.

(Prosecution History, March 17, 2006 Response, at p. 27.)  This is consistent with the specifications of the Patents-In-Suit, which repeatedly refer to *a* resin matrix such that a person of ordinary skill in the art would understand that the fibers of the multiple sections are embedded in the same resin matrix.

39.    As discussed above, Mercury's Accused Products have three layers of fibers (glass, carbon, glass) embedded in three distinct resin matrices.  Accordingly, Mercury's Accused Products do not have a unitary resin matrix as required by the asserted claims.  Further, to the extent CTC attempts to argue that the three resin matrices of Mercury's Accused Products are equivalent to the single resin matrix of the Asserted Patents, such an argument would be precluded by the doctrine of prosecution history estoppel.

40.    Further, as alleged above, Mercury does not engage in any activities that would constitute an act of direct or indirect infringement.  For example, Mercury does not make, use, sell, offer for sale, or import any Accused Products in the United States.  Nor has Mercury contributed to or induced another to infringe the Patents-In-Suit.  Mercury has not engaged in any activities in the United States with respect to the Accused Products for more than five years.

41.    As alleged above, to the extent that CTC argues that certain of Mercury's activities prior to June 2012 constitute acts of infringement (they do not), such activities were not in violation of a valid U.S. patent, as all such activities occurred prior to the issuance of the Second Reexamination Certificates for the Patents-In-Suit, and as stated in Mercury's Tenth Affirmative Defense set forth in its Answer to the Third Amended Complaint and Affirmative Defenses in the Related Action, intervening rights have arisen with respect to all such activities.

42.    In the Related Action, CTC also contends that each asserted claim of the

13

49058596

'162 Patent is valid.  Mercury however contends that each asserted claim of the '162 Patent is invalid.

43.     The '162 Patent is invalid for failure to meet the requirements of the Patent Act, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

44.     The asserted claims of the '162 Patent are anticipated and/or rendered obvious by at least (but not limited to?) the following prior art references:

- L. R. Gambone, *Alternative Materials for Overhead Conductors*, Canadian Electrical Association, ST-318, (Dec. 1991) (hereinafter "Gambone");

- Japanese Patent No. JP H 6-7112 U (Munakata Takeo) (January 28, 1994) (hereinafter "Takeo");

- James G. Vaughan et al., *Characterization of Mechanical and Thermal Properties of Advanced Composite Pultrusions*, Electric Power Institute, Technical Report-106271 (Aug. 1995) (hereinafter "Vaughan");

- Douglass et al., *Maximize Use of Existing Route*, Transmission & Distribution World (March 2002) (hereinafter "Douglass");

- G. Newaz et al., *Structural Composite Cores for Overhead Power Transmission Conductors*, Electric Power Institute, EM-51110 (April, 1997) (hereinafter "Newaz");

- Nori et al., *Experimental and Finite Element Analysis of Pultruded Glass-Graphite/Epoxy Hybrids in Axial and Flexural Modes of Vibration*, Journal of Composite Materials, Vol. 30, No. 18/1996 (hereinafter "Nori");

- J. Balsam, *Development of a Composite-Reinforced Aluminum Conductor,* National Renewable Energy Laboratory, Golden, CO (US) (November 11, 1999) (hereinafter "Balsam").

45.     The bases for invalidity articulated above are merely examples of some of the ways in which the '162 Patent is invalid.  In the Related Action Mercury has

14

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

reserved the right to raise additional grounds of invalidity and identify additional prior art references as its investigation progresses.

46.     CTC also contends that each asserted claim of the '319 Patent is valid. Mercury contends however that each asserted claim of the '319 Patent is invalid.

47.     The '319 Patent is invalid for failure to meet the requirements of the Patent Act, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

48.     The asserted claims of the '319 Patent are anticipated and/or rendered obvious by at least the following prior art references:  Gambone, Takeo, Vaughan, Douglass, Newaz, Nori, Balsam.

49.     The bases for invalidity articulated above are merely examples of some of the ways in which the '319 Patent is invalid.  In the Related Action, Mercury has also reserved the right to raise additional grounds of invalidity and identify additional prior art references as its investigation progresses.

50.     The Patents-In-Suit are also unenforceable due to inequitable conduct and fraud committed before the U.S. Patent and Trademark Office ("USPTO") for at least the following reasons.  As alleged more fully below, CTC and, upon information and belief, the named Defendants in this action knowingly and willfully made a number of fraudulent omissions and misrepresentations to the USPTO with clear intent to deceive the patent examiner which should not have resulted (but did eventually result) in the procurement of the Patents.  These include:

**A.      Blatant Plagiarism of Douglass Reference in Provisional Application, Failure to Disclose Douglass During Prosecution, and Misrepresentations Regarding Inventorship**

51.     On or about April 23, 2002, CTC's predecessor in interest, through its attorney, Defendant McIntosh of The McIntosh Group, filed Provisional Application No. 60/374,879, titled "Aluminum Composite Conductor Cable."  The Patents-In-Suit claim priority to this Provisional Application.

52.     Significant substantive portions of the Provisional Application were

copied verbatim from the Douglass reference without providing any citations or attribution to Douglass.  The Applicants (including named inventors Defendants Clement Hiel and George Korzeniowski) and their attorney, Defendant McIntosh, failed to disclose Douglass to the USPTO during the original prosecution or at any other time thereafter—such as, for example, during the First and Second Reexaminations.  At least Hiel and Korzeniowski were keenly aware of the Douglass reference at some point before the Provisional Application was filed.

53.     In addition, Hiel and Korzeniowski submitted Inventor Declarations with related PCT Application No. PCT/US03/12520 and U.S. Patent Application No. 10/511,881 (the U.S. application that matured into the '162 Patent) in which they declared they were the "first" and true inventors of the "subject matter which is claimed and for which a patent is sought."  This representation was false, and Hiel and Korzeniowski knew it was false when made, because the named inventors were clearly aware of Douglass given the significant amount of text from Douglass that appears verbatim in the Provisional Application.

54.     Upon information and belief, the Applicants' failure to disclose Douglass to the USPTO during prosecution, their blatant plagiarism of Douglass in the Provisional Application, and the inventors' misrepresentations about inventorship, was intentional and was specifically designed to deceive the USPTO. These intentional omissions and misrepresentations constitute inequitable conduct and fraud because Douglass is a material prior art reference.

55.     Douglass is material to patentability because it introduces the topic "high tensile strength" member for conductors used in the "overhead transmission" of electricity.  *See* Douglass at p. 22.  Further, Douglass teaches that such high strength members can include "fiberglass and graphite composites."  *See* Douglass at p. 25.  These elements can be found in each of the asserted independent claims of the Patents-In-Suit, each of which disclose and claim electrical cables with a glass and carbon composite core.  Thus, if Douglass had been disclosed to the USPTO

16

49058596

Examiner during prosecution and/or during the First or Second Reexaminations, neither the original patents nor the First and Second Reexamination Certificates would have issued.  Named and Doe Defendants, as well as CTC, knew that and thus intentionally decided to omit the Douglass reference and defraud the USPTO.

**B.     Failure to Disclose Gambone and Newaz During Second Reexamination Proceedings After Amending Claims to Add "Overhead" Limitation in Response to Office Action Rejecting Claims**

56.     During the Second Reexaminations of the Patents-In-Suit, the Patent Owners and their counsel also failed to meet their duty of candor and disclosure as required under 37 C.F.R. §§ 1.555, 1.565, and 11.18, which apply to documents that are material to patentability.  The duty of candor and disclosure applies to "the patent owner, each attorney or agent who represents the patent owner, and every other individual who is substantively involved on behalf of the patent owner in a reexamination proceeding."  37 C.F.R. § 11.18, and MPEP § 2282.

57.     In connection with their Request for Ex Parte Reexamination dated June 13, 2011 for claims 1-83 of the '162 Patent and Request for Ex Parte Reexamination dated June 6, 2011 for claims 1-72 of the '319 Patent (the "Second Reexamination Requests"), Mercury, through its counsel Cardinal Law Group, LLC, brought the Vaughan, Gambone, and Newaz prior art references to the USPTO's attention.  The USPTO agreed that each of these references presented a substantial new question of patentability.

58.     During the Second Reexamination Proceedings, the USPTO Examiner issued Office Actions rejecting claims 1-83 of the '162 Patent and claims 1-72 of the '319 Patent as anticipated by and/or rendered obvious in light of the prior art, including, *inter alia*, the Vaughan reference.  The Examiner did not specifically discuss Gambone or Newaz as a basis for rejecting the claims of the Patents-In-Suit.

59.     In response to the claim rejections, the Patent Owners amended all claims to include the additional limitation "overhead" and argued that this new

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

1  limitation overcame the prior art references cited by the Examiner in the Office

2  Actions—namely, Vaughan.

3      60.    Significantly, however, the Patent Owners failed to point out to the

4  Examiner that the Gambone and Newaz prior art references were material and could

5  not be considered cumulative of Vaughan in light of the claims as amended during

6  the Second Reexaminations to include the additional limitation, "overhead." The

7  Gambone and Newaz references are material because they teach "overhead"

8  conductors with a hybrid carbon/glass core. Indeed, both references explicitly

9  include the word "overhead" in their titles: L. R. Gambone, *Alternative Materials*

10 *for Overhead Conductors*, Canadian Electrical Association, ST-318, (Dec. 1991); G.

11 Newaz et al., *Structural Composite Cores for Overhead Power Transmission*

12 *Conductors*, Electric Power Institute, EM-51110 (April, 1997). The key elements

13 taught by Gambone and Newaz can be found in each of the asserted independent

14 claims as amended during the Second Reexamination Proceedings, as each claim

15 discloses and claims overhead electrical cables with a glass and carbon composite

16 core.

17     61.    Moreover, Defendants Hiel (named inventor) and Jason Huang (at that

18 time CEO of CTC Cable Corporation) submitted declarations in support of Patent

19 Owners' Responses to the Office Actions in which they stated that at the time of the

20 invention, it was unexpected that the glass/carbon hybrid composites would be

21 suitable for use as a core for an overhead electrical cable.

22     62.    The Examiner was ultimately persuaded by Defendants Hiel's and

23 Huang's statements and allowed the new claims as amended. In the Examiner's

24 Statement of Reasons for Patentability and/or Confirmation, the Examiner stated that

25 the "declarations of Dr. Hiel and Dr. Huang … present persuasive evidence that at

26 the time of the invention it was unexpected that the glass/carbon hybrid composites

27 would be suitable for use as a core for an overhead electrical cable…. Thus, these

28 references alone or in combination fail to provide any teaching or suggesting for

18

49058596

using the disclosed hybrid round glass/carbon fiber composites for use as a core in overhead electrical cables as claimed."

63.     On information and belief, Defendants Hiel's and Huang's statements were knowingly false when made.  Hiel, Huang, and their counsel, Defendant David F. Dockery, must have been aware of the highly material Gambone and Newaz references—which disclose overhead conductors with a hybrid carbon/glass core—given that these references were submitted to the USPTO as invalidating prior art references in support of the Second Reexamination Requests.

64.     Moreover, upon information and belief, other declarants who provided declarations in support of Patent Owner during the Second Reexamination proceedings also made materially false and misleading statements in their declarations.  For example, Defendant Bruce S. Bernstein submitted a declaration to the USPTO in support of CTC in which he argued that the Vaughan reference does not disclose "overhead" cables as that term is used in the amended claims, and further stated that he had authored certain portions of the Vaughan reference.  Upon information and belief, Bernstein did not author any portion of the Vaughan reference.

65.     Further, Patent Owners and their counsel compounded these material misrepresentations by failing to alert the USPTO to the Gambone and Newaz references—which specifically relate to overhead conductors—after having amended the claims to include the additional limitation "overhead."  On information and belief, Patent Owners and their counsel omitted these material references with the deliberate intent to deceive the USPTO.

66.     But for these material misrepresentations and omissions, the USPTO would not have issued Ex Parte Reexamination Certificates at the conclusion of the Second Reexamination Proceedings.  Rather, the USPTO would have rejected the claims as amended.

67.     Further compounding these material misrepresentations and omissions,

the Patent Owners and their counsel also failed to bring to the USPTO's attention material litigation-related documents that they were obligated to disclose—namely, the Expert Report of Joseph E. Sumerak on Invalidity of U.S. Patent Nos. 7,211,319 and 7,368,162; the Expert Report of Mr. Livio Gambone on Invalidity of U.S. Patent Nos. 7,211,319 and 7,368,162; and the Expert Report of Professor Golam M. Newaz, Ph.D. on Invalidity of U.S. Patent Nos. 7,211,319 and 7,368,162 (the "Expert Reports"). These Expert Reports clearly contradict positions that Patent Owners took in their Response to the Examiner's Rejection and thus are material to patentability.

68. Therefore, for at least the reasons stated above, the '162 and '319 Patents are unenforceable due to inequitable conduct and fraud before the USPTO.

69. As alleged above, the Patent Owners, with the support, cooperation and assistance of CTC and the other Defendants in this action, obtained the '162 and '319 Patents by knowingly and willfully misrepresenting facts and omitting material prior art during proceedings before the USPTO. Had CTC and Defendants disclosed the true facts to the USPTO, the Patents would have been determined to be invalid. However, by their conduct, CTC and Defendants intended to defraud the USPTO, including to approve issuance of the fraudulently obtained Patents so that CTC and Defendants could attempt to enforce the Patents knowing of their fraudulent procurement.

70. Knowing that the Patents-In-Suit were invalid because of their intentional defrauding of the USPTO, the Named and Doe Defendants continued their anticompetitive scheme by not only directing CTC to bring patent litigation against Mercury and others, but to threaten bringing such litigation against entities wanting to do business with Mercury. For example, when CTC discovered that Mercury and General Cable had entered into a written Manufacture and Distribution Agreement for General Cable to produce and sell Mercury's bare overhead carbon composite core conductors in the U.S., CTC named General Cable as a Defendant in

20

49058596

another Patent Infringement Lawsuit against Mercury at the direction and agreement of the Named Defendants.

## C.   NAMED DEFENDANTS CONDUCT HARMED MERCURY AND U.S. CUSTOMERS AND RESULTED IN CTC OBTAINING MONOPOLY POWER

71.   As a result of CTC and Named Defendants and Doe Defendants' actions, including the false and baseless intimidation of actual and/or potential Mercury customers, Mercury decided to withdraw from manufacturing and/or selling bare overhead carbon composite core conductors in the U.S., leaving CTC as the only U.S. source.  Thus, the anticompetitive campaign worked exactly as CTC and the Named Defendants intended, *i.e.,* as the only U.S. source of bare overheard carbon composite core conductors, CTC had monopoly power.

72.   CTC's monopoly position in the U.S. bare overhead composite core conductor market is not due to a superior product, business acumen, or historic accident, but rather to the exclusionary anticompetitive acts described herein. Indeed, outside the U.S., where Mercury and CTC compete for sales of bare overhead carbon composite core conductors, CTC does not have a monopoly; Mercury wins many bids because of its superior product and lower prices.

73.   As a result of CTC's and Defendants' unlawful acts, Mercury has suffered and will continue to suffer antitrust injury in an amount to be proven at trial. CTC's and Defendants' attempted enforcement of the Patents-In-Suit against Mercury and others, and CTC's and Defendants' anticompetitive conduct, have produced significant injury to Mercury and others.  First, they have forced Mercury to expend substantial amounts of money, time and human resources in order to defend the Related Action, and to now bring this new lawsuit.  Second, they forced Mercury to cease all activity relating to its Accused Products in the United States, causing Mercury millions of dollars in potential lost sales over the years.  Bare overhead carbon composite core conductors in the U.S. is a Relevant Market Named

21

49058596

and Doe Defendants' conduct harmed U.S. Customers (Utilities) and ratepayers (Utility Customers).

74.    As a result of CTC's and Named Defendants' unlawful acts, U.S. customers of bare overhead carbon composite core conductors, having only one source, have paid more money for products, have had less innovation and have to endure poorer service than if the Market was competitive.  Indeed, given high costs and reliability issues, U.S. customers prefer to have at least two sources of products, including bare overhead carbon composite core conductors, but the acts of CTC, the Named Defendants and the Doe Defendants described herein have denied that to those customers.

**D.    U.S. BARE OVERHEAD CARBON COMPOSITE CORE CONDUCTORS IS THE RELEVANT MARKET**

75.    The U.S. power transmission systems today are using technology that is over 100 years old and working well beyond design limits.  In the United States, the power transmission systems have absorbed many years of load growth and are now expected to handle bulk power exchanges across much longer distances.  As a result, the transmission grid is operating at or near its peak capacity with little or no contingent reserve transmission capacity.  In addition, age and the inherent mechanical limitations of existing technologies make today's systems vulnerable to widespread failure – leading to power interruptions, brownouts, and multi-state blackouts.  In short, with existing transmission lines well past their useful economic life and operating at their peak transmission capacity, the entire U.S. transmission grid is teetering on the edge of failure.

76.    Obtaining rights of way to build new U.S. transmission corridors are considered extremely challenging and prohibitively expensive due to heavy regulation, environmental concerns and the almost certain prospect of legal challenges.  Accordingly, given the significant cost and difficulty of building new transmission lines, the best solution is to replace existing transmission lines with bare

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION
49058596

1   overhead conductors which can remain within existing physical transmission

2   corridors and support infrastructure but operate at both higher current carrying

3   capacity ("Ampacity")  and operating temperatures.

4        77.   While there are a number of high temperature low sag conductors

5   available, bare overhead carbon composite core conductors are the cheapest, lightest

6   and most reliable and efficient way to significantly increase transmission capacity

7   within existing transmission capacity within existing transmission corridors.  Indeed,

8   no other high temperature low sag conductors can provide the same combination of:

9   (1) double the transmission capacity of existing transmission lines, (2) lower

10  operating line sag, (3)lower line weight;, (3)higher line strength properties; (4) high

11  level of reliability; (5) at a reasonable cost, and (6) use existing transmission

12  corridors and towers as bare overhead carbon composite core conductors.  Thus, bare

13  overhead carbon composite core conductors are the Relevant Product Market in

14  which to assess the anticompetitive effects of CTC, the Named Defendants' and Doe

15  Defendants' conduct.

16       78.   The United States is an appropriate Relevant Geographic Market

17  because U.S. customers are risk adverse and do not want to purchase foreign

18  manufactured products given their unreliability, high shipping costs, and their failure

19  to meet the quality and operational specifications required by such U.S. customers.

20       79.   Only two companies, Mercury Cable and CTC Global, currently have

21  the capability to manufacture and sell bare overhead carbon composite core

22  conductors that meet the quality and operational specifications required by U.S.

23  utilities.  However, as a result of the acts of CTC, the Named Defendants and the

24  Doe Defendants detailed herein, including but not limited to their campaign of

25  bringing and threatening baseless patent litigation knowing that the patents being

26  enforced were fraudulently procured, U.S. customers of bare overhead carbon

27  composite core conductors had only one source – CTC.  Thus, CTC obtained

28  monopoly power solely as a result of its anticompetitive exclusionary conduct.

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

# COUNT 1:

## CONSPIRACY TO EXCLUDE COMPETITION IN VIOLATION OF SECTION 1 OF SHERMAN ACT

80.    Mercury incorporates by reference and realleges the preceding paragraphs of this Complaint as though fully set forth herein.

81.    As detailed above, each Named and Doe Defendant had economic interests different from those of CTC and benefited personally by reason of the conspiracy and illegal acts engaged in by CTC and others as described herein, *i.e.* each Named and Doe Defendant either received or will receive compensation (including stock options and bonuses) based in whole or in part upon the conduct which is the subject of this Complaint.

82.    Accordingly, each Named Defendant is a separate entity capable of conspiring with other Name Defendants and with CTC.

83.    Each of the Named Defendants knew of, directed and/or participated in the exclusionary anticompetitive conduct detailed herein, including with the purpose and having the effect of foreclosing from the U.S. market CTC's only U.S. competitor of bare overhead carbon composite core conductors, Mercury and its U.S. partners.  The anticompetitive exclusionary conduct also has had effect of deterring any new entry to the U.S. bare overhead carbon composite core conductor market.

84.    As a result of said conspiracy, U.S. customers had no choice but to capitulate to CTC's increased prices, poorer service, unreliable product delivery and installation and lack of innovative products and forego their desire to have a dual source for bare overhead carbon composite core conductors.

85.    Unless enjoined, CTC, and the named and Doe Defendants have been, and will continue to be, virtually the only source of the relevant product and customers needing their relevant product will have to accept CTC's and Defendants' relentless price increases since they have no alternative source of the Relevant Product.

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

## COUNT 2:

## CONSPIRACY TO MONOPOLIZE IN VIOLATION OF
## SECTION 2 OF THE SHERMAN ACT

86.     Mercury incorporates by reference and realleges the preceding paragraphs of this Complaint as though fully set forth herein.

87.     The named and Doe defendants along with CTC combined and conspired to exclude CTC competitors from the U.S. bare overhead carbon composite core conductors market, including Mercury, by, among other things, fraudulently procuring the patents at issue through misrepresentation and/or omission before the USPTO.  If the USPTO had known of those misrepresentations and/or omissions, it would never have issued the patents-in-issue, which has allowed CTC and Defendants to try to enforce those patents in issue against Mercury and other actual and potential CTC competitors with knowledge of their fraudulent procurement.

88.     Said conduct as well as all the conduct described herein has no legitimate or lawful business purpose other than to destroy competition.  Defendants' specific intent to monopolize is evidenced by the fact that given Mercury's withdraw from the market and no new entry, CTC is a monopolist and the sole supplier of the U.S. bare overhead carbon composite core conductors.

89.     Unless enjoined, CTC and the named and Doe Defendants have been, and will continue to be, virtually the only source of the relevant product and customers needing their relevant product will have to accept CTC's and Defendants' relentless price increases since they have no alternative source of the Relevant Product.

90.     In short, CTC has obtained monopoly power in the U.S. bare overhead composite core conductor market, not through superior product, business acumen, or historic accident but rather through the use of exclusionary anticompetitive conduct described herein which have no business justification and only are done to destroy

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

the competitive process.

## COUNT 3:

## UNFAIR COMPETITION UNDER CALIFORNIA
## BUSINESS PROFESSIONS CODE § 17200

91. Mercury incorporates by reference and realleges the preceding paragraphs of this Complaint as though fully set forth herein.

92. By the acts alleged herein, CTC, the named Defendants and Doe Defendants have engaged in unfair competition within the meaning of California Business and Profession Code §§ 17200, *et seq.* and the common law.

93. The acts of CTC and the named and Doe Defendants violate and/or threaten to violate the policy and/or spirit of the antitrust laws, and otherwise significantly threaten and/or harm competition. By the deceptive acts, practices, and conduct alleged above, CTC and Defendants are violating Sections 1 and 2 of the Sherman Act which has injured competition as well as consumers in California and elsewhere. This same unfair and unlawful anticompetitive conduct constitutes a violation of California Business and Professions Code § 17200 and California common law.

94. By reason of CTC and Defendants' acts, Mercury also has suffered, and will continue to suffer, injury and damages.

## PRAYER FOR RELIEF

WHEREFORE, Mercury respectfully prays the Court grant the following relief:

(1) That judgment be entered in favor of Mercury;

(2) That Defendants be found to have violated the Sherman Act and California Business and Professions Code § 17200 by enforcing patents they know to be invalid and unenforceable;

(3) That Mercury be awarded damages, including treble damages;

(4) That the Court issue a preliminary and permanent injunction restraining

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

1                Defendants from engaging in any unlawful anticompetitive or

2                monopolistic conduct during the pendency and after the conclusion of

3                this lawsuit at trial;

4     (5)     That the Court find this to be an exceptional case; and

5     (6)     That Defendants be awarded such other and further relief as the Court

6                may deem just and proper.

7

8                                Respectfully submitted,

9                                FOX ROTHSCHILD LLP

10 Dated:  June 15, 2017        By:  *s/James E. Doroshow*

11                                JAMES E. DOROSHOW
                               ASHE PURI

12                                1800 Century Park East, Suite 300
                               Los Angeles, CA  90067

13

14                                Attorneys for Attorneys for Plaintiff,
                               MERCURY CABLE & ENERGY, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596

## **JURY DEMAND**

Mercury requests a trial by jury on all issues so triable.

FOX ROTHSCHILD LLP

Dated: June 15, 2017        By:   *s/James E. Doroshow*

JAMES E. DOROSHOW
ASHE PURI
1800 Century Park East, Suite 300
Los Angeles, CA  90067

Attorneys for Attorneys for Plaintiff,
MERCURY CABLE & ENERGY, INC.

COMPLAINT FOR WALKER-PROCESS FRAUD, ATTEMPTED MONOPOLIZATION

49058596